## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

01 JUN -8 AM 9: 36

N.D. OF ALABAMA

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | ] ] ] |
| Plaintiff(s), | ] ] CV-00-N-1939-S |
| vs. | ] ] |
| J & D CONVENIENCE STORE AND CAR WASH, INC., | ] ] ] |
| Defendant(s). | ] |

**ENTERED**

JUN 0 8 2001

### Memorandum of Opinion

**I.    Introduction**

This is a declaratory judgment action filed by Employers Mutual Casualty Company ("EMC") against J & D Convenience Store and Car Wash, Inc. ("J & D"). In this action, EMC, an insurance company, asks the court to declare that it is not obligated by its contract of insurance to reimburse J & D for losses incurred as a result of a fire which occurred on or about November 6, 1999. J & D filed a counterclaim for breach of contract and bad faith. (Doc. # 4, filed on Aug. 8, 2000). This matter is presently before the court on the MOTION of EMC for partial summary judgment as to J & D's counterclaim of bad faith. (Doc. # 13, filed on January 16, 2001). After careful consideration of the arguments on counsel, the relevant law, and the record as a whole, the court finds that the motion for partial summary judgment is due to be granted.



## II. Background[1]

The facts in this matter are largely undisputed. On November 6, 1999, J & D, a business located in Bessemer, Alabama, sustained a "total loss" due to a fire. At the time of the fire loss, J & D was insured against various perils, such as fire, by EMC. (Plf. Ex. 2, Policy # 1W5-85-36---0). On or about December 14, 1999, J & D submitted a sworn proof of loss claiming fire damage in the amount of $230,600.00. (Plf. Ex. 3). On June 14, 2000, based upon information obtained from "cause and origin" experts, electrical experts, accounting experts, and witness interviews, EMC denied J & D's insurance claim. The claim was denied on the basis that David Acoff ("Acoff"), the owner and sole shareholder of the insured store, either caused or directed the loss, and on the basis that Acoff misrepresented material facts and circumstances relating to the fire and the scope of losses resulting therefrom. (Plf. Ex. 10, Herrold Depo. at pp. 82-83, 117; Plf Ex. 15; Plf. Ex. 4). Armed with the findings of its own cause and origin expert, J & D takes the position that EMC acted in bad faith in investigating, adjusting, and ultimately denying its insurance claim. (*Counterclaim* at ¶ 32).

## III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

2

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

3

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility

4

determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

In Count II of its Counterclaim, J & D alleges that, despite full and complete compliance with the provisions of the policy of insurance, EMC has acted unreasonably in its investigation and adjustment of the claim and has refused to make payment pursuant to the terms of the insurance agreement, all in bad faith. (*Counterclaim* at ¶ 32). Under Alabama law, in order to prevail on a claim of bad faith, the plaintiff-insured must establish:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and
>
> (e) if intentional failure to determine the existence of a lawful basis is relied upon, the insured must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to pay the claim.

*Ex parte Simmons*, 2000 WL 1137368 at * 7 (Ala. 2000); *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179 (Ala. 1982). The plaintiff's burden is great but not

insurmountable. *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982); *Jones v. Alabama Farm Bureau Mut. Casualty Co.*, 507 So. 2d 396 (Ala. 1986).

Requirements (a) through (d), listed above, represent the "normal" bad faith case, i.e., the case where the insurer has actual knowledge that no lawful basis exists for refusing to pay the insured's claim. In order to recover under this "normal" theory of bad faith, the "proof offered must show that the plaintiff is entitled to directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *Dutton*, 419 So. 2d at 1362. Requirement (e) represents the so called "abnormal" bad faith case, i.e., the case where the insurer intentionally failed to determine whether there was any lawful basis for refusing to pay the insured's claim. In order to recover under this "abnormal" theory of bad faith, the insured must produce substantial evidence showing that the insurer: (1) intentionally or recklessly failed to investigate the insured's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999).

### A.    The "Abnormal" Bad Faith Case

J & D takes the position that EMC intentionally or recklessly failed to adequately investigate its insurance claim and/or intentionally or recklessly failed to submit its insurance claim to a substantive and cognitive review. As previously noted, and as apparently recognized by J & D, the state of mind of the insurer is a crucial point of focus in any bad faith action. Indeed, the Alabama Supreme Court has repeatedly declined to

6

recognize a cause of action for negligent or wanton handling of insurance claims; rather, the refusal to pay an insurance claim or, alternatively, the performance of an inadequate claims investigation, must be either intentional or reckless. *See Ex parte Government Emples. Ins. Co.*, 729 So. 2d 299 (Ala. 1999); *Kervin v. Southern Guar. Ins. Co.*, 667 So. 2d 704 (Ala. 1995); *Webb v. International Indem. Co.*, 599 So. 2d 1144 (Ala. 1992); *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1 (Ala. 1981). While the line between intentional/reckless and negligent behavior is not always easy to delineate, the Alabama Supreme Court's relatively recent decision in *State Farm Fire & Casualty Co. v. Slade* is instructive.

In *Slade*, the plaintiffs/insureds, Gains and Ida Slade, asserted various fraud and breach of contract claims against their insurance carrier in connection with the sale/purchase of a homeowners insurance policy and an adjustment of a property claim under that policy. *Slade*, 747 So. 2d at 293. The Slades argued that the insurer denied their property claim in bad faith because it did not investigate the possibility that the retaining wall was part of their "dwelling" and, therefore, the possibility that their home was directly struck by lightning; that it relied upon an ambiguous portion of the policy to deny their claim; and that it failed to conduct a proper investigation into whether lightning struck the slab of their home. *Id.* at 315. In concluding that a portion of the insured's bad faith claims were properly submitted to the jury, the court reasoned:

> The Slades produced substantial evidence, in the form of expert testimony, indicating that the term "dwelling" did include their retaining wall. They also presented substantial evidence indicating that State Farm *never*, in the course of its investigation, sent to their home someone who was qualified to

conduct a lightning investigation. The Slades presented evidence indicating that State Farm *never* interviewed any of the witnesses present on the day lightning struck their retaining wall. The Slades presented expert testimony indicating that these omissions amounted to an improper investigation, on the basis that an investigation of a claim such as the Slades made required the use of a lighting expert. The Slades also presented evidence indicating that State Farm told its engineer, Buck Durham, to investigate a "possible soil problem" and that it did not tell Durham about the lightning strike. This evidence conflicted with State Farm's "Good Faith Handling" video, which was admitted into evidence and which contained a statement that State Farm's claims-handling policy was to attempt to find coverage.

*Id.*

The present case, however, is not *Slade*. Here, it is undisputed that, within the days and weeks following the insured's loss, EMC engaged a cause and origin expert to determine the cause of the fire, engaged an electrical engineer to rule out possible electrical causes of the fire, engaged the services of a contractor to estimate the cost of repairing the damaged building, engaged the services of an accounting firm in an effort to determine the validity of the insured's personal property claim, and interviewed the insured and the insured's girlfriend/business partner regarding the cause and extent of the loss. Based on information obtained during its investigation, information purportedly suggesting that the fire was caused or directed by the insured, EMC determined that the loss was not a covered peril under the EMC policy.[2]

---

[2] The EMC policy provides, in pertinent part, as follows:

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

8

In an effort to convince the court that EMC's claims decision was premised upon an intentionally flawed or recklessly conducted investigation, J & D cites the court to the findings of Jim Posey ("Posey"), its own cause and origin expert, who concluded, albeit some eight months after EMC's claim denial, as follows:

> [I]t is my professional opinion that this fire originated in the attic of Mr. Acoff's store as a slow smoldering fire. Neither customers nor employees would be able to detect this fire as the odor of smoke would be above them and venting through outdoors through the attic ventilation vents.
>
> I cannot say for sure what caused the fire, however, I believe that the electrical power surges that were being experienced

---

(1) Acting alone or in collusion with others;

(2) Whether or not occurring during the hours of employment. . . .

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**C. Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

(Plf. Ex. 2, "Business Owner Special Property Coverage Form" at p. 11 of 23, "Business Owner Common Policy Conditions" at p. 2 of 3).

9

> just hours before the fire [was] discovered are involved. This is especially so as the fire patterns indicate an attic fire and the only heat source in the attic was the electrical wiring, some of which, in the area of origin was not installed according to the National Electric Code.
>
> I disagree with Mr. Edward's [cause and origin expert hired by EMC] opinion that the fire was started in the waiting room using gasoline as an accelerant, because the overall burn patterns are not consistent with this.
>
> I disagree with Mr. Point's [electrical engineer hired by EMC] opinion that this fire was not caused by electricity for several reasons. First, he only examined some of the electrical system components down below the attic. Second, he failed to address the circuits in the attic which were not run in conduit or EMT. In fact, he stated that all the circuits were all run in conduit. He also failed to address the junction box located in the attic over the hall which had no cover on it.
>
> It is my opinion further neither Mr. Edwards or Mr. Point could have reached their conclusions on a sound basis as neither excavated the fire scene completely in the area the fire started.

(Def. Ex. 4, Posey Analysis at pp. 8-9). In addition to citing Posey's findings, J & D also points out that the fire department's "Initial Report" lists the ignition factor as "other electrical failure" and, although an investigator with the fire department testified that he determined the fire was caused by arson on November 8, 1999, J & D was not advised of the investigator's findings until February 7, 2000. (Plf. Ex. 6, Stubbs Letter at p. 2; Def. Ex. 3). Moreover, according to J & D, while EMC suggests that the security alarm's failure to sound is indicative of arson on the part of the insured,[3] EMC's adjusters and investigators

---

[3] Acoff purportedly "armed" the security system and locked the doors to the store just twenty-nine minutes before the fire was first detected. (Plf. Ex. 1, Acoff Depo. at pp. 93-94).

10

apparently ignored the fact that the smoke and heat detectors also failed to sound. (Def. Response at p. 11).

The court is convinced that, even if believed, the evidence proffered by J & D would, at most, illustrate negligent as opposed to *intentional* or *reckless* conduct. For instance, in contrast to the conduct of the insurer in *Slade*, there is no evidence tending to suggest: (1) that the experts engaged by EMC were somehow incompetent or unqualified to investigate the insured's loss; (2) that EMC attempted to mislead its experts or otherwise influence the findings of their respective investigations; or (3) that EMC failed to interview witnesses present on the day of the fire or otherwise privy to information concerning the insured's loss. To the contrary, while EMC's investigation may not have been a model of perfection, the evidence before the court suggests that EMC thoroughly investigated J & D's insurance claim and based its claims denial upon a cognitive review of all information then available. The law requires nothing more. EMC's motion for summary judgment as to J & D's "abnormal" bad faith will be granted.

**B.     The "Normal" Bad Faith Case**

EMC maintains that J & D's "normal" bad faith claim also fails because J &D cannot demonstrate requirement (c), i.e., the absence of any reasonably legitimate or arguable reason for denying the insurance claim. *See Fuller v. State Farm Fire & Casualty Co.*, 721 F. Supp. 1219, 1226 (M.D. Ala. 1989) ("While a plaintiff must eventually prove each of these elements, a bad faith claim under Alabama law 'ultimately depends upon whether there is a debatable reason for denying the claim'") (quoting *Jones v. Alabama Farm Bureau Mut. Cas. Co.*, 507 So. 2d 396, 402 (Ala. 1986). An arguable or debatable reason is one that is

"'open to dispute or question,' and '[w]hen a claim is fairly debatable the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.'" *Ex parte Simmons* WL 1137368 at *6 (quoting *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1983)).

It is undisputed that, in the days and weeks following the insured's loss, EMC conducted interviews, engaged experts, and dispatched adjusters in an effort to determine the cause and extent of J & D loss. The results of EMC's investigation indicated, *inter alia*, that:

- The incendiary origin of the fire was confirmed by a cause and origin expert;

- An electrical cause of the fire was ruled out by an electrical engineer;

- David Acoff left the store at 7 p.m. on the night of the fire and the fire was first detected only twenty-nine (29) minutes later;

- David Acoff, the owner of the store, locked all doors and activated the security alarm on the night of the fire;

- David Acoff, the owner of the store, was the only person to have keys to the doors of the exterior locks of the building which burned;

- The Bessemer Fire Department had to break down the doors to attack the fire in the interior of the building;

- The security alarm did not activate at the time of the fire;

- A gasoline container was found inside the building upon extinguishment of the fire;

- The cause and origin expert detected a strong odor of gasoline in the burned premises during his investigation;

- All sources of accidental origin of the fire were ruled out.

(Plf. Ex. 10, Herold Depo. at pp. 82-84). For these reasons and others, EMC concluded that the fire was either intentionally set or procured by the insured and, therefore, was not a covered peril under the policy of insurance. The evidence proffered by J & D to discredit the reasoning underlying EMC's denial, namely the opinion of a second expert indicating that the fire was likely caused by a power surge, was not before EMC at the time the claim determination was made. For this reason, while such an opinion is undoubtedly relevant to J & D's breach of contract claim, it has no bearing on whether EMC denied the insurance claim in bad faith. *See Slade*, 747 So. 2d at 317 n.6 ("the date of denial is crucial because information received by the insurer after the date of the denial is irrelevant to the determination of whether the insurer denied at that date in bad faith"). In short, the court is convinced that, irrespective of whether EMC's decision ultimately proves to be a correct one, it certainly had an "arguable reason" for denying the insured's claim. Accordingly, EMC's motion for summary judgment as to J & D's "normal" bad faith claim will be granted.

## V.   Conclusion

By separate order to be entered contemporaneously herewith, the plaintiff's motion for partial summary judgment as to defendant's counter claim of bad faith will be granted.

Done, this ___7th___ of June, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE